**Elizabeth Tedesco Milesnick**, OSB No. 050933
emilesnick@idealegal.com
IDEALEGAL
2240 N Interstate Ave., Ste. 270
Portland, Oregon 97227
Telephone: (503) 902-5760

Attorneys for Plaintiff Radagast Pet Food, Inc.

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| RADAGAST PET FOOD, INC. an Oregon corporation,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>WHITEBRIDGE PET BRANDS, LLC, a Delaware limited liability company; FRONTENAC COMPANY LLC, a Delaware limited liability company,<br><br>　　　　Defendants. | Case No.:<br><br>COMPLAINT FOR TRADEMARK INFRINGEMENT AND BREACH OF CONTRACT<br><br>(Federal Trademark Infringement; False Designation of Origin; Breach of Contract) (Injunctive Relief Sought)<br><br>DEMAND FOR JURY TRIAL |

## INTRODUCTION

1.　　This is an action at law and in equity for trademark infringement, false designation of origin, and breach of contract stemming from defendants Whitebridge Pet Brands, LLC ("Whitebridge") and Frontenac Company LLC ("Frontenac") coordinated efforts to copy and/or coopt Radagast Pet Food, Inc. ("Radagast")'s well-loved Rad Cat® premium raw cat

COMPLAINT FOR TRADEMARK INFRINGEMENT AND BREACH OF CONTRACT - 1

food, willfully and knowingly using the Rad Cat® federally registered slogan on the same goods—after expressly promising to cease—and improperly using Radagast confidential information to, on information and belief, leverage a buyout of the company when it was most vulnerable.  Whitebridge and Frontenac cannot be allowed to simply bully a smaller company facing financial woes by forcibly taking over its still-valuable intellectual property.

## JURISDICTION AND VENUE

2.     This Court has subject matter jurisdiction under Section 39 of the Lanham Act, 15 USC § 1121, and under 28 USC §§ 1331 and 1338.  This Court has supplemental jurisdiction over Radagast's related state and common-law claims pursuant to 28 USC §§ 1338 and 1367.

3.     This District is a proper venue pursuant to 28 USC § 1391(b)(2) because a substantial part of the events or omissions giving rise to Radagast's claims occurred in this District, and a substantial part of the harm alleged herein was directed by Whitebridge and Frontenac to Radagast and felt by Radagast in this District.

4.     Whitebridge and Frontenac are also alleged to have breached agreements, described below, providing that "Any litigation relating to this agreement will be tried in the state or federal courts in Portland, Oregon.  Each party submits to jurisdiction of such courts, and waives any right to change venue."

## THE PARTIES

5.     Radagast is an Oregon corporation organized and existing under the laws of the state of Oregon, with its place of business at P.O. Box 14279, Portland, Oregon 97293.

COMPLAINT FOR TRADEMARK INFRINGEMENT AND BREACH OF CONTRACT - 2

6.      On information and belief, Whitebridge is a limited liability company organized and existing under the laws of the state of Delaware, with its place of business at 1224 Fern Ridge Pkwy # 200, Creve Coeur, Missouri 63141.

7.      On information and belief, Frontenac is a limited liability company organized and existing under the laws of the state of Delaware, with its place of business at One South Wacker Drive, Suite 2980, Chicago, Illinois 60606.

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

8.      Radagast is a family-owned and operated company specializing in manufacturing healthy raw pet food for cats.  In particular, Radagast is well-known for its popular Rad Cat® Raw Diet premium raw cat food sold in tubs.

9.      Since at least as early as April 11, 2005, Radagast has widely used the slogan FEED YOUR FELINES LIKE THE CARNIVORES THEY ARE for its raw cat food products, prominently displaying the mark on marketing materials, point-of-sale displays, the company website and business cards, and on all product packaging.

10.     Radagast owns U.S. Trademark Registration No. 4198367 for FEED YOUR FELINES LIKE THE CARNIVORES THEY ARE in connection with "pet food" ("the Radagast Carnivore Mark").

11.     An example of Radagast's use of the Radagast Carnivore Mark, from its website www.radfood.com, is shown below:

COMPLAINT FOR TRADEMARK INFRINGEMENT AND BREACH OF CONTRACT - 3



12.     Radagast has built up substantial goodwill and reputation with consumers for the goods it provides under the Radagast Carnivore Mark.

13.     Whitebridge is in the business of manufacturing natural and minimally processed food for pets, including cats, under its "Tiki Cat" brand.

14.     On information and belief, Frontenac is a private equity firm that owns Whitebridge and handles significant financial transactions for the company.

15.     In 2015 and 2016, Whitebridge, Frontenac, and Radagast negotiated a potential asset purchase of Radagast by Whitebridge and Frontenac ("the Transaction"). Whitebridge's Tiki Cat product line did not include a raw cat food option.

16.     On March 2, 2015, prior to initiating the due diligence process, Radagast asked both Whitebridge and Frontenac to sign the nondisclosure agreements attached hereto as "Exhibit A" ("the NDA").  The NDA is governed by Oregon law, without regard to principles of conflicts of law.

17.     The NDA states that the sole purpose of Radagast's disclosure of any of its confidential information to Whitebridge is "evaluating [a] possible business transaction."

COMPLAINT FOR TRADEMARK INFRINGEMENT AND BREACH OF CONTRACT - 4

Whitebridge and Frontenac expressly agreed that they would "not use or disclose Confidential Information" except for this purpose.

18.    After the execution of the NDA, Radagast shared volumes of legal, financial, processing, and operational information, as well as detailed customer and vendor information.  At Whitebridge's insistence, Radagast also shared its most closely guarded trade secret: the formulas for its Rad Cat® raw food varieties.

19.    In late 2015, Whitebridge and Frontenac gained actual knowledge of Radagast's trademark assets, including the Radagast Carnivore Mark.

20.    On or about February 2016, Radagast, Whitebridge, and Frontenac decided against completing the Transaction and the companies' negotiations ceased.

21.    On February 17, 2016, counsel for Radagast e-mailed counsel for Whitebridge and Frontenac stating that because the Transaction had been terminated, pursuant to Section 5 of the NDA, they must cease all use of any Radagast confidential information, return all materials furnished by Radagast that contain confidential information, and "deliver (not destroy)" any electronic records or other materials containing confidential information, "including—per the NDA—materials prepared by Whitebridge and/or Frontenac that include or discuss 'Confidential Information,' such as notes, internal memoranda, emails, analyses, etc." Radagast further asked that, as required by the NDA, Whitebridge and Frontenac state in writing under oath that they have complied with Section 5.

22.    On February 18, 2016, counsel for Whitebridge and Frontenac stated that all hard copies containing confidential information would be returned to Radagast and all electronic records would be deleted.

COMPLAINT FOR TRADEMARK INFRINGEMENT AND BREACH OF CONTRACT - 5

23.    On March 3, 2016, Radagast received a box from Whitebridge purportedly returning all Radagast confidential information in hard copy form.  On March 14, 2016, Whitebridge's counsel stated, "I confirmed with Joe [Rondinelli of Frontenac] that both he and Aaron Wit[t of Whitebridge] returned all of their hard copy materials and destroyed any electronic copies."

24.    On or about October 2016, Radagast learned that Whitebridge was using the slogan FEED YOUR CAT LIKE THE OBLIGATE CARNIVORE SHE IS on packaging for Whitebridge's Tiki Cat cat food ("the First Whitebridge Carnivore Slogan").  An example of Whitebridge's use of the slogan on "Tiki Cat" cat food packaging is shown below:



25.    Radagast's and Whitebridge's cat food products are sold in grocery and pet stores all over the country, including in many of the same stores, and in the same sections of

COMPLAINT FOR TRADEMARK INFRINGEMENT AND BREACH OF CONTRACT - 6

those stores.  The likelihood of consumer confusion between FEED YOUR FELINES LIKE

THE CARNIVORES THEY ARE and FEED YOUR CAT LIKE THE OBLIGATE

CARNIVORE SHE IS was evident.

26.    On October 31, 2016, Radagast sent a letter to Whitebridge noting the

similarities between the two companies' slogans, including that they have "the same meaning,

directed to the same groups of consumers, buying the same or similar products in many of the

same stores." Radagast demanded that Whitebridge cease and desist using the First Whitebridge

Carnivore Slogan or any other phrase confusingly similar to the Radagast Carnivore Mark.

27.    Following discussion between counsel by telephone and email, on

February 7, 2017, counsel for Whitebridge stated, "Whitebridge has indicated that the packaging

containing the line 'Feed your cat like the obligate carnivore she is' will be out of the market

before the end of 2017."

28.    Radagast followed up by letter of April 25, 2017, acknowledging and

accepting Whitebridge's agreement to cease use of Whitebridge's First Carnivore Tagline, and

informing Whitebridge that it expected to see no use of the tagline after January 1, 2018.

29.    On October 15, 2018, Radagast publicly announced that the company

would be closing due to economic concerns.  Nonetheless, the company still held valuable

intellectual property and other assets, and had every intention of either selling the company's

assets or finding a way to partner with another company to revitalize Rad Cat®.

30.    Fewer than thirty minutes after Radagast's public announcement of its

closure, however, Radagast received a telephone call from its former banker Freddy Rodriguez at

KeyBank.  Rodriguez reported that he had just received a voicemail message from Rondinelli of

Frontenac asking about Radagast's banking situation.

COMPLAINT FOR TRADEMARK INFRINGEMENT AND BREACH OF CONTRACT - 7

31.     Radagast emailed Rondinelli and informed him that Whitebridge and Frontenac had no right to any financial information about the company, stating, "Do not contact our bank or any of our associates."

32.     The next morning, Radagast received a call from a Loan Workout Relationship Manager in the KeyBank Asset Recovery Group.  She informed Radagast that Frontenac had reached out to KeyBank's "Top of House in Cleveland" saying Frontenac had "an interest in [Radagast's] assets."  KeyBank thought Frontenac may be a creditor of Radagast.

33.     Although Radagast gave Rodriguez's name and contact information to Whitebridge and Frontenac in 2015 during the due diligence process, Rodriguez moved out of Oregon shortly after the Transaction was terminated.  Radagast had not worked with Rodriguez at KeyBank for more than two years when Frontenac called him.  There is no publicly available information indicating that Rodriguez had ever been Radagast's banking contact.

34.     On information and belief, Whitebridge and Frontenac used Radagast's confidential information to contact Radagast's bank immediately after the public announcement of the company's closure, seeking to assume a position as a secured creditor and force a sale of the company's assets to Whitebridge and Frontenac.

35.     On information and belief, Whitebridge and Frontenac have maintained access to Radagast's confidential information, despite their representations to the contrary and the requirements of the NDA.

36.     In March 2019, at the Global Pet Expo trade show, Whitebridge announced that it was coming out with its own line of premium raw cat food in tubs.

37.     In late March 2019, Radagast reviewed Whitebridge's Tiki Pets website, https://tikipets.com/cat/, and discovered that Whitebridge's use of the slogan FEED YOUR CAT

COMPLAINT FOR TRADEMARK INFRINGEMENT AND BREACH OF CONTRACT - 8

LIKE THE CARNIVORE SHE IS ("Whitebridge's Second Carnivore Tagline"). This time, Whitebridge dropped the word "obligate," making the slogan <u>even more</u> similar to Radagast's FEED YOUR FELINES LIKE THE CARNIVORES THEY ARE.

38.    An example of Whitebridge's Second Carnivore tagline on its website is shown below:



39.    Radagast has engaged in negotiations with several companies for the purchase of its remaining assets, including its intellectual property. Such intellectual property includes, among other things, its trademark portfolio and the Radagast Carnivore Tagline, as well as its trade secrets and the valuable recipes for its popular raw cat foods.

40.    On May 3, 2019, Radagast was close to completing a sale of its assets when it informed the buyer that its product slogan was being infringed. The buyer then decided against the transaction. Radagast is concerned that Whitebridge and Frontenac's infringement and interference with its business may make an asset sale impossible.

COMPLAINT FOR TRADEMARK INFRINGEMENT AND BREACH OF CONTRACT - 9

## FIRST CLAIM FOR RELIEF

### (Federal Trademark Infringement – 15 USC § 1114(1)) (Against Whitebridge)

41.     Whitebridge's use in commerce of the First Whitebridge Carnivore Slogan and Second Whitebridge Carnivore Slogan is likely to cause confusion, mistake, and deception as to the affiliation, connection or association of Radagast and Whitebridge, and their respective products, in violation of 15 U.S.C. § 1114.

42.     As a direct and proximate result of the acts and omissions of Whitebridge alleged in this Complaint, Radagast has suffered and will continue to suffer damage to its business, reputation, and goodwill, and other damages, in an amount to be proven at trial.

43.     The wrongful acts and omissions of Whitebridge have caused and, unless restrained and enjoined by this Court, will continue to cause, serious irreparable injury and damage to Radagast and to the goodwill associated with the Radagast Carnivore Mark, and to the overall value of Radagast's intellectual property portfolio and other assets.  These tortious acts have caused and will continue to cause injury to the public as well, for which Radagast has no adequate remedy at law.  Radagast is therefore entitled to injunctive relief as set forth herein.

44.     Whitebridge had both actual and constructive knowledge of Radagast's rights in its federally registered Radagast Carnivore Mark prior to Whitebridge's infringing use of the First Whitebridge Carnivore Slogan and Second Whitebridge Slogan.

45.     Whitebridge has committed the wrongful acts and omissions willfully, and under the circumstances of this case, the Court should award a multiplier of damages of up to three times under Section 35 of the Lanham Act.  On information and belief, based on the facts to be proven, this will also be an exceptional case under Section 35 of the Lanham Act, thereby entitling Radagast to its reasonable attorney fees.

COMPLAINT FOR TRADEMARK INFRINGEMENT AND BREACH OF CONTRACT - 10

## SECOND CLAIM FOR RELIEF

## (False Designation of Origin – 15 USC § 1125(a)) (Against Whitebridge)

46.     Radagast realleges and incorporates by reference the allegations of the foregoing paragraphs as though fully set forth herein.

47.     The above-described use by Whitebridge of the Radagast Carnivore Mark is a false designation of origin as to the products made available by Whitebridge in interstate commerce.  By virtue of Whitebridge's use of the Radagast Carnivore Mark, consumers who use or learn of the services or goods of Whitebridge have likely mistakenly believed, and will continue to mistakenly believe, that the goods associated with Whitebridge originate with, are sponsored by, or are affiliated with Radagast.

48.     The adoption and use by Whitebridge of a slogan confusingly similar to the Radagast Carnivore Mark, the continuation of such use, and all of the other acts and omissions of Whitebridge have created confusion and the likelihood that the public will be further confused as to the true source, sponsorship, or affiliation of the goods of Whitebridge. As a result, Radagast and the public have been damaged, and unless Whitebridge is enjoined, will continue to be irreparably damaged further, as hereinabove alleged.

49.     Whitebridge committed the wrongful acts and omissions willfully, and under the circumstances of this case, the Court should award a multiplier of damages of up to three times under Section 35 of the Lanham Act.  On information and belief, based on the facts to be proven, this will also be an exceptional case under Section 35 of the Lanham Act, thereby entitling Radagast to its reasonable attorney fees.

COMPLAINT FOR TRADEMARK INFRINGEMENT AND BREACH OF CONTRACT - 11

## THIRD CLAIM FOR RELIEF

### (Breach of Contract - Written) (Against Whitebridge and Frontenac)

50.    Radagast realleges and incorporates by reference the allegations of the foregoing paragraphs as though fully set forth herein.

51.    Under the NDA, Whitebridge and Frontenac had duties to (1) use Radagast confidential information only for the purpose of evaluating the Transaction with Radagast; (2) cease all use of confidential information—for any purpose—upon Radagast's request; and (3) return all materials containing Radagast confidential information, keeping no copy for itself.  Whitebridge and Frontenac materially breached these duties by using Radagast confidential information to reach out to Radagast's former banker, seeking to leverage a sale of Radagast's assets and evidencing that Whitebridge and Frontenac have retained Radagast confidential information despite Radagast's request that all information be returned.

52.    All conditions precedent have occurred, been performed, or are otherwise satisfied, discharged, or excused.

53.    As a result of Whitebridge and Frontenac's breach of contract, the full extent of which is currently unknown, Radagast has been damaged in an amount to be proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, Radagast respectfully requests the following relief:

A.    A judgment in favor of Radagast requiring Whitebridge and Frontenac to account for and pay to Radagast all profits wrongfully derived by Whitebridge through its unlawful acts set forth herein and awarding Radagast's actual damages and/or a reasonable royalty, and enhanced profits and damages;

COMPLAINT FOR TRADEMARK INFRINGEMENT AND BREACH OF CONTRACT - 12

B.     An order that Whitebridge and Frontenac, their agents, directors, officers, servants, employees, successors and assigns, and any entity owned or controlled in whole or in part by Whitebridge, Frontenac, or by any agent, director, officer, servant, or employee of Whitebridge or Frontenac, and all those persons in active concert or participation with all or any of the foregoing, who receive notice of this judgment, directly or otherwise, be permanently restrained and enjoined from:

1.   using the Radagast Carnivore Mark or any other copy, reproduction, colorable imitation, simulation of the Radagast Carnivore Mark, or a confusingly similar mark, including but not limited to the First Whitebridge Carnivore Slogan and the Second Whitebridge Carnivore Slogan, on or in connection with the pet food market;

2.   using any trademark, service mark, name, logo, design, or source designation of any kind on or in connection with Whitebridge's goods or services that is a copy, reproduction, colorable imitation, or simulation of, or confusingly similar to the trademarks, service marks, names, or logos of Radagast;

3.   using any trademark, service mark, name, logo, design, or source designation of any kind on or in connection with Whitebridge's goods or services that is likely to cause confusion, mistake, deception, or public misunderstanding that such goods or services are produced or provided by Radagast, are sponsored or authorized by Radagast, or are in any way connected or related to Radagast; and

4.   using, disclosing, or retaining any Radagast confidential information.

C.     Pursuant to Section 36 of the Lanham Act, 15 USC § 1118, an order directing Whitebridge to deliver up for destruction all infringing labels, signs, prints, packages,

COMPLAINT FOR TRADEMARK INFRINGEMENT AND BREACH OF CONTRACT - 13

wrappers, receptacles, advertisements, invoices, mailers, flyers, promotional items, business

cards, stationary, and/or other materials in its possession or custody and control which are within

the United States, its territories and possessions, that display the First Whitebridge Carnivore

Slogan or the Second Whitebridge Carnivore Slogan;

        D.      To the extent Whitebridge and/or Frontenac have developed—directly or

indirectly—any cat food products with the benefit of Radagast confidential information, an order

directing Whitebridge and Frontenac to immediately and permanently cease development,

production and/or sale of any such product.

        E.      An award to Radagast of its costs (including expert fees), disbursements,

and reasonable attorney fees incurred in this action, together with interest, including prejudgment

interest, pursuant to 15 USC § 1117 and the equity powers of this Court; and

        F.      Such other and further relief as this Court may deem just and proper.

## <u>DEMAND FOR JURY TRIAL</u>

Radagast hereby demands a trial by jury on all issues so triable.


Dated May 9, 2019.

                  IDEALEGAL


                  /s/ *Elizabeth Tedesco Milesnick*
                  Elizabeth Tedesco Milesnick, OSB No. 050933
                  E-mail: emilesnick@idealegal.com
                  Phone: (503) 902-5760

                  Attorneys for Plaintiff Radagast Pet Food, Inc.


COMPLAINT FOR TRADEMARK INFRINGEMENT AND BREACH OF CONTRACT - 14



## NONDISCLOSURE AGREEMENT
### between

Radagast Pet Food, Inc. ("Radagast")
3617 S.E. 17th Avenue
Portland, Oregon 97202

and

*Frontenac X Private Capital*
*Limited Partnership* ("Recipient")
*135 South LaSalle St. Suite 3800*
*Chicago, IL 60603*

**Purpose of disclosure:** *Evaluating possible business transaction.*

Radagast is willing to disclose confidential information to Recipient for the purpose stated above, but only on the conditions stated in this agreement. In order to protect information disclosed by Radagast to Recipient, the parties, intending to be legally bound, agree that:

**1.** Recipient will keep confidential any nonpublic information received from Radagast or otherwise acquired during any tours of Radagast's facilities ("Confidential Information"). Confidential Information may be written, oral, in any tangible form or electronic, embodied in or derived from product samples, or in other forms. Confidential Information includes the terms and existence of this agreement and the fact that the parties are discussing a possible business transaction. Any Radagast information provided to Recipient is presumed to be Confidential Information unless otherwise stated by Radagast or this agreement.

**2.** Recipient will protect Confidential Information from disclosure by using reasonable care and at least the same care Recipient uses to protect its own confidential information. Recipient will immediately notify Radagast upon discovery of any loss or unauthorized disclosure of Confidential Information.

**3.** Recipient may disclose Confidential Information to its employees who need to know Confidential Information for the purpose stated above and who are required by Recipient to comply with the restrictions imposed on Recipient by this agreement. A breach of this

agreement by a Recipient employee will be deemed a breach by Recipient.

**4.** Recipient will not use or disclose Confidential Information, except for the purpose stated above and as permitted by this agreement. Recipient will not reverse engineer Confidential Information or incorporate Confidential Information in any products that Recipient manufactures or sells, or will in the future manufacture or sell.

**5.** At Radagast's request, Recipient will (i) cease all use of Confidential Information; (ii) return all materials furnished by Radagast that contain Confidential Information; and (iii) destroy or deliver to Radagast (as instructed by Radagast) any electronic records or other materials containing Confidential Information, including materials prepared by Recipient. Upon request, Recipient will state in writing under oath whether it has complied with this section.

**6.** This agreement will remain in effect as long as Recipient knows or possesses Confidential Information, but will not apply to Confidential Information that: (a) is or becomes publicly available through no fault of Recipient; or (b) is or has been received in good faith by Recipient without restriction on use or disclosure from a third party having no obligation of confidentiality to Radagast; or (c) is or has been independently developed by Recipient without reference to Confidential Information received from

Radagast, as evidenced by Recipient's written records

7. Recipient acknowledges that Confidential Information and any intellectual property rights embodied therein are owned by Radagast or its licensors, and that nothing in this agreement is intended to be a transfer, assignment, or license.

8. If Recipient is required by judicial or administrative process to disclose Confidential Information, Recipient will promptly notify Radagast and allow Radagast a reasonable time to oppose such process. If disclosure is nonetheless required, Recipient will use its best efforts to limit the dissemination of Confidential Information that is disclosed and will furnish only that portion of the Confidential Information that is legally required (in the opinion of its counsel).

9. The fact that portions of Confidential Information may be publicly available or otherwise not subject to this agreement will not affect Recipient's obligations with respect to the remaining portion or with respect to the particular formulation or compilation disclosed by Radagast.

10. Radagast does not guarantee the accuracy or completeness of information disclosed to Recipient. This agreement does not require Radagast to disclose specific information, require either party to enter into any business relationship, or create any agency or partnership between the parties.

11. Recipient acknowledges that money damages would not be a sufficient remedy for breach of this agreement by Recipient. In the event of a breach of this agreement, Radagast will be entitled to injunctive relief without posting bond, in addition to any other available remedies. In any litigation concerning this agreement, the prevailing party will be entitled to recover all reasonable expenses of litigation, including reasonable attorney fees at trial and on any appeal.

12. This agreement will be governed by Oregon law, without regard to principles of conflicts of law. Any litigation relating to this agreement will be tried in state or federal courts in Portland, Oregon. Each party submits to the jurisdiction of such courts, and waives any right to change venue. All additions or modifications to this

agreement must be in writing and executed by both parties.

13. Any provision of this agreement that is held invalid will be modified as necessary to render it valid and enforceable. If any provision of this agreement is held invalid and cannot be modified to render it valid and enforceable, the invalidity will not affect other obligations, provisions, or applications of this agreement that can be given effect without the invalid provisions.

14. Radagast's failure to demand strict performance of any provision of this agreement will not constitute a waiver of any provision of this agreement or the right to demand strict performance in the future.

15. This agreement may be executed in counterparts. Fax or electronic transmission of a signed original document will be equivalent to delivery of an original.

Effective Date: March 2, 2015.

Radagast Pet Food, Inc.

Authorized Signature

JANICE M HATCH-RIZZI
Name

President
Title

[COMPANY NAME] Fronteaac X Private Capital L.P.

Authorized Signature

Joseph Rond-nelli
Name

Vice President
Title

Page 2 of 2

70001712.1

Exhibit A
Page 2 of 4



## NONDISCLOSURE AGREEMENT
### between

Radagast Pet Food, Inc. ("Radagast")
3617 S.E. 17th Avenue
Portland, Oregon 97202                    and

Olivier Amice _____("Recipient")
_____

**Purpose of disclosure:** *Evaluating possible business transaction.*

Radagast is willing to disclose confidential information to Recipient for the purpose stated above, but only on the conditions stated in this agreement. In order to protect information disclosed by Radagast to Recipient, the parties, intending to be legally bound, agree that:

**1.** Recipient will keep confidential any nonpublic information received from Radagast or otherwise acquired during any tours of Radagast's facilities ("Confidential Information"). Confidential Information may be written, oral, in any tangible form or electronic, embodied in or derived from product samples, or in other forms. Confidential Information includes the terms and existence of this agreement and the fact that the parties are discussing a possible business transaction. Any Radagast information provided to Recipient is presumed to be Confidential Information unless otherwise stated by Radagast or this agreement.

**2.** Recipient will protect Confidential Information from disclosure by using reasonable care and at least the same care Recipient uses to protect its own confidential information. Recipient will immediately notify Radagast upon discovery of any loss or unauthorized disclosure of Confidential Information.

**3.** Recipient may disclose Confidential Information to its employees who need to know Confidential Information for the purpose stated above and who are required by Recipient to comply with the restrictions imposed on Recipient by this agreement. A breach of this

agreement by a Recipient employee will be deemed a breach by Recipient.

**4.** Recipient will not use or disclose Confidential Information, except for the purpose stated above and as permitted by this agreement. Recipient will not reverse engineer Confidential Information or incorporate Confidential Information in any products that Recipient manufactures or sells, or will in the future manufacture or sell.

**5.** At Radagast's request, Recipient will (i) cease all use of Confidential Information; (ii) return all materials furnished by Radagast that contain Confidential Information; and (iii) destroy or deliver to Radagast (as instructed by Radagast) any electronic records or other materials containing Confidential Information, including materials prepared by Recipient. Upon request, Recipient will state in writing under oath whether it has complied with this section.

**6.** This agreement will remain in effect as long as Recipient knows or possesses Confidential Information, but will not apply to Confidential Information that: (a) is or becomes publicly available through no fault of Recipient; or (b) is or has been received in good faith by Recipient without restriction on use or disclosure from a third party having no obligation of confidentiality to Radagast; or (c) is or has been independently developed by Recipient without reference to Confidential Information received from

Radagast, as evidenced by Recipient's written records.

**7.** Recipient acknowledges that Confidential Information and any intellectual property rights embodied therein are owned by Radagast or its licensors, and that nothing in this agreement is intended to be a transfer, assignment, or license.

**8.** If Recipient is required by judicial or administrative process to disclose Confidential Information, Recipient will promptly notify Radagast and allow Radagast a reasonable time to oppose such process. If disclosure is nonetheless required, Recipient will use its best efforts to limit the dissemination of Confidential Information that is disclosed and will furnish only that portion of the Confidential Information that is legally required (in the opinion of its counsel).

**9.** The fact that portions of Confidential Information may be publicly available or otherwise not subject to this agreement will not affect Recipient's obligations with respect to the remaining portion or with respect to the particular formulation or compilation disclosed by Radagast.

**10.** Radagast does not guarantee the accuracy or completeness of information disclosed to Recipient. This agreement does not require Radagast to disclose specific information, require either party to enter into any business relationship, or create any agency or partnership between the parties.

**11.** Recipient acknowledges that money damages would not be a sufficient remedy for breach of this agreement by Recipient. In the event of a breach of this agreement, Radagast will be entitled to injunctive relief without posting bond, in addition to any other available remedies. In any litigation concerning this agreement, the prevailing party will be entitled to recover all reasonable expenses of litigation, including reasonable attorney fees at trial and on any appeal.

**12.** This agreement will be governed by Oregon law, without regard to principles of conflicts of law. Any litigation relating to this agreement will be tried in state or federal courts in Portland, Oregon. Each party submits to the jurisdiction of such courts, and waives any right to change venue. All additions or modifications to this

agreement must be in writing and executed by both parties.

**13.** Any provision of this agreement that is held invalid will be modified as necessary to render it valid and enforceable. If any provision of this agreement is held invalid and cannot be modified to render it valid and enforceable, the invalidity will not affect other obligations, provisions, or applications of this agreement that can be given effect without the invalid provisions.

**14.** Radagast's failure to demand strict performance of any provision of this agreement will not constitute a waiver of any provision of this agreement or the right to demand strict performance in the future.

**15.** This agreement may be executed in counterparts. Fax or electronic transmission of a signed original document will be equivalent to delivery of an original.

**Effective Date: March 2, 2015.**

**Radagast Pet Food, Inc.**

Authorized Signature

Name

Title

**[COMPANY NAME]** WPB, llc

Authorized Signature
Olivier Amice

Name
CEO

Title

Page 2 of 2

70001712.1

Exhibit A
Page 4 of 4